IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONNA RUDZIK, Administratrix of the Estate of Joseph M. Kovach, Deceased, | : : : | |
| Plaintiff | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, et al., | : | NO. 07-cv-1383 |
| Defendant | : | |

MEMORANDUM OPINION

TIMOTHY R. RICE                                                                           December 10, 2008
U.S. MAGISTRATE JUDGE

      Pursuant to 42 U.S.C. § 1983, plaintiff Donna Rudzik alleges defendant Officers Joseph Purfield, Jonah Conway, and Andrew Langhuber were deliberately indifferent to the serious medical and safety needs of her deceased son, Joseph Kovach. Kovach died from an accidental drug overdose while in police custody. Rudzik also alleges the City of Philadelphia failed to properly train its police officers, and failed to promulgate policies, regarding the administration of medical assistance to those with serious medical needs and its oversight of pretrial detainees assigned to suicide watch cells. The police officer defendants seek summary judgment, arguing they are entitled to qualified immunity. The City seeks summary judgment, arguing Rudzik failed to produce any evidence to support her claims of municipal liability. For the following reasons, I will grant the City's motion, but deny the police officers' motion.

I.    <u>Summary Judgment Standard</u>

      Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and

that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of showing the record reveals no genuine issue as to any material fact and that they are entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Once the moving party has met its burden, the non-moving party must go beyond the pleadings to set forth "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The party opposing summary judgment, however, "must do more than simply show that there is some metaphysical doubt as to the material facts;" it must produce competent evidence supporting opposition. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

I must resolve all justifiable inferences in the non-moving party's favor. Sommer v. Vanguard Group, 461 F.3d 397, 403 (3d Cir. 2006). I may not consider evidence on a motion for summary judgment that would not be admissible at trial. Pamintuan v. Nanticoke Mem'l Hosp., 192 F.3d 378, 387 n.13 (3d Cir. 1999). I may not weigh the evidence or make credibility determinations. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Therefore, "where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." Big Apple BMW, Inc., 974 F.2d at 1363.

To defeat a motion for summary judgment, factual disputes must be both material and genuine. Anderson, 477 U.S. at 248. An issue is "material" if it is predicated upon facts that are relevant and necessary and that may affect the outcome of the matter pursuant to the underlying law. Id. An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 248-49. Summary judgment is mandated against a party who fails to make a showing sufficient to establish the existence of an element essential to that

party's case, because such a failure as to an essential element necessarily renders all other facts immaterial. Celotex Corp., 477 U.S. at 322-23. Thus, if there is only one reasonable conclusion from the record regarding the potential verdict under the governing law, summary judgment must be awarded to the moving party. Anderson, 477 U.S. at 250.

II.   Discussion

   A.   Qualified Immunity

Qualified immunity is an entitlement not to stand trial, not a defense from liability. Saucier v. Katz, 533 U.S. 194, 201 (2001). Qualified immunity protects police officers from "undue interference with their duties and from potentially disabling threats of liability," Wright v. City of Philadelphia, 409 F.3d 595, 599 (3d Cir. 2005) (citing Elder v. Holloway, 510 U.S. 514 (1994)), if their conduct did not violate clearly established statutory or constitutional law of which a reasonable person would have been aware. Wright, 409 F.3d at 599 (citing Harlow v. Fitzgerald, 457 U.S. 800, 806 (1982)). Thus, the qualified immunity doctrine "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." Rowe v. Romano, 940 F. Supp. 798, 802 (E.D. Pa. 1996) (Joyner, J.); Hunter v. Bryant, 502 U.S. 224, 229 (1991).

First, I must decide whether the facts, taken in a light most favorable to the plaintiff, establish a constitutional violation. Saucier, 533 U.S. at 201. If not, the inquiry ends. Gilles v. David, 427 F.3d 197, 203 (3d Cir. 2005). If a constitutional violation is established, I must determine whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Saucier, 533 U.S. at 202. "If an official could have reasonably believed that his or her actions were lawful, the official receives immunity even if in fact the actions were

3

not lawful." Forbes v. Twp. of Lower Merion, 313 F.3d 144, 148 (3d Cir. 2002). The officer may be entitled to immunity even if he is mistaken as to what the law requires. Carswell v. Borough of Homestead, 381 F.3d 235, 242 (3d Cir. 2004).

Thus, I must decide whether the facts taken in a light most favorable to Rudzik demonstrate Officers Purfield, Conway, and Langhuber were deliberately indifferent to Kovach's need for serious medical attention while in police custody. See Saucier, 533 U.S. at 201.

B.   Deliberate Indifference

The Due Process Clause of the Fourteenth Amendment provides detainees the right to receive medical treatment for serious medical needs while in police custody. See Baldi v. City of Philadelphia, 609 F. Supp. 162, 166 (E.D. Pa. 1985). Like a convicted prisoner, the Due Process rights of a detainee are examined under the Eighth Amendment standard. See County of Sacramento v. Lewis, 523 U.S. 833, 849-50 (1998); Colburn v. Upper Darby Township, 946 F.2d 1017,1023 (3d Cir. 1991). Prison officials commit a constitutional violation when they are "deliberately indifferent to the serious medical needs of an inmate." Despaigne v. Crolew, 89 F.Supp. 2d 582, 585 (E.D. Pa. 2000). The "requirement of reckless or deliberate indifference implies that there must be 'a strong likelihood, rather than a mere possibility,'" that harm will occur. Colburn, 946 F.2d at 1024 (quoting Torraco v. Maloney, 923 F.2d 231, 239 (1st Cir. 1991). For Eighth Amendment protections to apply, the injury must be either a medical condition diagnosed by a physician as requiring treatment or "one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Correctional Inst. v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). Further, the officer must know of, and disregard, an excessive risk to inmate health or safety. Id.

4

1. Officers Purfield and Conway

Genuine issues of material fact exist as to whether Officers Purfield and Conway, Kovach's arresting officers, were deliberately indifferent to Kovach's need for medical attention when they arrested him. Viewing the facts in the light most favorable to Rudzik, a reasonable officer would not believe his actions were lawful under the circumstances. See Saucier, 533 U.S. at 202.

On June 10, 2005, a passing motorist stopped Officers Purfield and Conway and informed them there was a woman screaming and a man passed out in a car near a Home Depot parking lot. See Defendants' Motion for Summary Judgment [hereinafter "Summary Judgment Motion"] at Exhibit 2 [hereinafter "Dep. of Joseph Purfield"], at 20-21; Summary Judgment Motion at Exhibit 3 [hereinafter "Dep. of Jonah Conway"], at 12:1-9. Upon arrival, the officers found Kovach and two females in a parked car. See Dep. of Joseph Purfield at 25:4-8; Dep. of Jonah Conway at 12:10-15. Kovach was in the passenger seat and appeared to be asleep. See Dep. of Joseph Purfield at 25:6-8; Summary Judgment Motion at Exhibit 4 [hereinafter Dep. of Rachel Ford"], at 17-18. Disputed issues of material fact include: (1) whether Kovach produced identification himself, see Dep. of Joseph Purfield at 42:15-24, or whether Rachel Ford, a passenger in the car, told the officers his name, see Dep. of Rachel Ford at 17:15-18; (2) whether the officers saw Kovach take a handful of pills when he was exiting the car, compare Dep. of Joseph Purfield at 45:18-24, 46:1-2, with Dep. of Rachel Ford at 19:21-24, 20:1-14, 51:12-24, 52:1-21; (3) whether Ford informed the officers Kovach was in danger of an overdose, compare Dep. of Joseph Purfield at 46:3-6, with Dep. of Rachel Ford at 212:4-9; and (4) whether Kovach's behavior would have led the officers to believe Kovach needed serious medical

5

attention, compare Dep. of Joseph Purfield at 10-24, 50:1-12, 52:8-23, with Dep. of Rachel Ford at 21:4-8.  These issues are at the heart of whether the officers were deliberately indifferent to Kovach's medical needs.  Because resolution of these factual disputes involve credibility determinations, a jury must resolve them.  For example, if Officers Purfield and Conway saw Kovach take a handful of pills, knew Kovach could not identify himself, and knew he was in danger of an overdose, then they would have been deliberately indifferent to Kovach's medical needs when they took him to the police station instead of to a hospital.  No officer could reasonably believe such actions could be lawful.

        2.  Officer Langhuber

Genuine issues of material fact also exist as to whether Officer Langhuber was aware Kovach needed medical attention and whether he was deliberately indifferent to those needs when he processed Kovach into the 15th police district detention facilities.  Viewing the facts in the light most favorable to Rudzik, a reasonable officer would not believe his actions were lawful.

Defendants claim Officer Langhuber did not have any information that would lead him to conclude Kovach required medical attention.  See Defendants' Reply to Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment at 3.  Defendants rely on Officer Langhuber's deposition, in which he stated: (1) when Kovach arrived at the detention center, Officer Langhuber went through the Medical Detainee Checklist with him, see Summary Judgment Motion at Exhibit 5 [hereinafter "Dep. of Andrew Langhuber"], at 62:6-16, 65:8-24, 66:1-12; (2) Officer Langhuber placed Kovach in a "high-risk" or suicide watch cell, not because he believed Kovach needed medical attention, but because either Kovach was loud and

6

boisterous, Kovach was using racial epithets, or it was the only cell available, see id. at 38:7-15; and (3) Kovach yelled, kicked, and pounded on the door for at least five-to-six hours, see id. at 49:16-24, 61:6-18.

Rudzik, however, presented the following conflicting evidence which, viewed in the light most favorable to her, would establish Officer Langhuber knew Kovach needed medical attention and had placed him in a "high-risk" cell because of the medical issues. Such facts, if resolved in Rudzik's favor, would establish Langhuber was deliberately indifferent to Kovach's medical needs.

1. Officer Langhuber was aware Kovach was taking methadone[1] and antidepressants because he noted it on the Detainee's Medical Checklist. See Detainee's Medical Checklist for Joseph Kovach, Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment [hereinafter "Plaintiff's Brief"] at Ex. I.

2. Prisoner logs establish at least seven non-high risk cells were unoccupied when Officer Langhuber processed Kovach. See Plaintiff's Brief at Ex. K.

3. Officer Luke Jurkiewicz, an officer on duty in the closed-circuit television room adjacent to the cell area during Officer Langhuber's shift, stated he did not recall hearing any yelling or pounding on the Plexiglas window of Kovach's cell. See Plaintiff's Brief at Ex. L, at 11:4-14.

4. The scientific evidence suggests Kovach could not have been loud and boisterous.

---

[1] Methadone is "a synthetic opioid analgesic, possessing pharmacological actions similar to those of morphine and heroin and similar potential for addiction" . . . it is used "as a narcotic abstinence syndrome suppressant in the treatment of heroin addiction." See Dorland's Illustrated Medical Dictionary [hereinafter "Dorland's"] 1163-64 (31st ed. 2007).

7

Officer Langhuber housed Kovach in the high-risk cell at approximately 11:10 p.m, see Dep. of Andrew Langhuber at 36:2-5, and claims Kovach was "banging on the Plexiglas and kicking it and yelling" for at least five-to-six hours, see id. at 61:6-18.  The medical examiner testified, however, Kovach was likely dead at least six hours before Officers Sinibaldi and Boyd found him at 8:00 a.m., see Plaintiff's Brief at Ex. M, at 64:6-19, and an expert toxicologist stated the levels of the anti-depressant Citalopram and methadone found in Kovach's blood would have produced drowsiness, somnolence,[2] dizziness and tachycardia,[3] not loud and obnoxious behavior, see Plaintiff's Brief at Ex. N, at 3-4.

Such evidence establishes a genuine issue of material fact exists, i.e., whether Officer Langhuber ignored Kovach's potentially life-threatening medical condition.  In addition, the issue involves questions of credibility, which are for a jury.  If a jury finds the facts as alleged by Rudzik, no officer could reasonably believe such actions were lawful.

    C.    <u>Rudzik's Claim Against the City of Philadelphia</u>

Rudzik asserts she has alleged facts sufficient to show a violation of Kovach's constitutional rights resulted from the City of Philadelphia's policy or custom of providing insufficient training to its officers with respect to the proper handling of detainees and its failure to promulgate policy regarding detainees with serious medical needs.

For a municipality or other government entity to be liable under § 1983, a plaintiff must establish: (1) a deprivation of a constitutionally protected right; (2) resulting from a policy,

---

[2] Somnolence is "drowsiness or sleepiness, particularly in excess."  See <u>Dorland's</u> at 1760.

[3] Tachycardia is "excessive rapidity in the action of the heart."  See <u>Dorland's</u> at 1890.

practice, or custom. Monell v. Dept. of Social Svcs., 436 U.S. 658, 691-94 (1978). Municipal liability cannot be predicated on a respondeat superior theory. Reitz v. County of Bucks, 125 F.3d 139, 145 (3d Cir. 1997). "Municipal liability attaches only when 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" Id. (quoting Monell, 436 U.S. at 694).

    1.    Failure to Train

Although a municipality's failure to properly train its officers can constitute a violation under § 1983, a plaintiff must identify a municipal policy or custom that amounts to deliberate indifference. Carswell, 381 F.3d at 244. Such proof typically requires proof of a pattern of underlying constitutional violations, and demonstrate that the inadequate training caused a constitutional violation. Id.

Establishing municipal liability on a failure to train claim under § 1983 is difficult. Section 1983 liability can be found only where such failure amounts to deliberate indifference to the rights of those with whom the city employees come in contact. See Carter v. City of Philadelphia, 181 F.3d 339, 357 (3d Cir. 1999). First, Rudzik must identify a failure to provide specific training that has a causal nexus to Kovach's death. Second, she must demonstrate the absence of such training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivation occurred. Id. Finally, Rudzik must prove that, through its deliberate conduct, the City of Philadelphia was the moving force behind the alleged injury. See Board of County Commissioners of Bryan County v. Brown, 520 U.S. 397, 404 (1997).

Rudzik has presented no evidence that Kovach's death resulted from the City of

Philadelphia's deliberately indifferent failure to train its officers.  Rudzik has not shown the City failed to train its officers in dealing with detainees with serious medical conditions or detainees who otherwise threaten the safety of arrested persons in police custody.  See Monell, 436 U.S. 658.  The only evidence Rudzik offers to prove the City's deliberate indifference is the opinion of D. Randall Rider, who Rudzik cites as a police practices expert.  According to Rider, the City failed to train turnkeys and supervisors as to how to properly conduct cell checks to confirm prisoner well-being and failed to follow fundamental investigation techniques during the investigation into Kovach's death.  See Plaintiff's Brief at Ex. Z, at 20, 25.  Rudzik's expert, however, did not review or consider the deposition of Officer Bell, a certified Municipal Police Instructor at the Philadelphia Police Academy, concerning the training materials he used to instruct police recruits at the Academy, which describe the handling of adult prisoners in custody.  See id.

    In addition, Rider's opinion primarily focuses on flaws in the investigation into Kovach's death, id., which have no bearing on whether the City's alleged failure to train actually caused Kovach's death, an essential element required by Monell, 436 U.S. at 694.  An inadequate investigation following Kovach's death cannot, as a matter of law or logic, constitute evidence to establish that deficient training led to Kovach's death.  Rather, Rudzik must first identify a training flaw that was the cause of Kovach's death.[4]  Finally, Rudzik presents no evidence of similar accidental deaths or incidents, which would have put the City on notice that it needed to change its policies or training procedures for handling detainees.  Rudzik has offered no evidence, for example, that the City consciously opted to forego "better" or "more" training.  See

---

[4] For example, if the City had adequate training procedures, an officer's incompetence in executing them would not give rise to municipal liability.

Canton v. Harris, 489 U.S. 378, 391 (1989).  Rider's report is primarily focused on why individual officers violated city policies, not that city policies or customs caused Kovach's death.

        2.      Failure to Promulgate Policies

Similarly, Rudzik presents no evidence the City failed to promulgate policies regarding the administration of medical assistance to those with serious medical needs and the oversight of pretrial detainees assigned to suicide watch cells.[5]  See Carswell, 381 F.3d at 244 (plaintiff must identify municipal policy that amounts to deliberate indifference).  Indeed, Rudzik points to Philadelphia Police Department Directive 82, which addresses procedures officers should follow when a prisoner who is brought into the Detention Center is either injured or in need of medical treatment.  See Plaintiff's Brief at 20 (citing Summary Judgment Motion at Ex. 6, at 3).  Rudzik also notes Directive 128, which outlines the City's policy and procedures for handling intoxicated or semi-conscious detainees.  See id. (citing Summary Judgment Motion at Ex. 15).  The existence of such policies undermines Rudzik's Monell claim.

Rudzik has failed to satisfy her burden of offering sufficient evidence to establish the existence of a policy or custom of deliberate indifference to the constitutional rights of detainees in the City's custody.  See Carswell, 381 F.3d at 244.  No jury could reasonably find the City was deliberately indifferent to the need to train its officers or promulgate policy regarding detainees with serious medical needs and that this failure was the actual cause of Kovach's death.  Moreover, Rudzik has not shown a pattern of constitutional violations.  I, therefore, grant summary judgment in favor of the City.

---

[5] Rudzik mentions this theory of liability only in the introduction section of her brief and fails to elaborate on it or cite any evidence to support it.

III. <u>Conclusion</u>

Accordingly, I deny Defendants' motion for summary judgment as to the claims against Officers Purfield, Conway, and Langhuber. I grant summary judgment in favor of the City of Philadelphia based on the absence of deliberate indifference to official policy or custom. Officer Boyd, Sergeant Woltemate, and Corporal Brooks are dismissed by agreement.